FILED
09/09/2021
*Shirley Faust*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Rebecca Santos
DV-32-2021-0001089-PI
Vannatta, Shane
1.00

Matthew B. Lowy
Kathleen Molsberry
Kai Puhrmann
Lowy Law, P.L.L.C.
103 S. 5th Street E
Missoula, Montana 59801
(406) 926-6500
documents@LowyLawFirm.com

*Attorneys for Plaintiff Savanna Everett*

MONTANA FOURTH JUDICIAL DISTRICT COURT, MISSOULA COUNTY

| SAVANNA EVERETT, | Cause No. |
|---|---|
| Plaintiff, | Department No. |
| v. | Judge |
| HOLIDAY STATIONSTORES, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

COMES NOW Plaintiff Savanna Everett, by and through her counsel of record, Lowy Law, PLLC, for her claims for relief against the above-named defendant and alleges upon information and belief as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is Savanna Everett, an individual. For all times relevant to the present lawsuit, Ms. Everett was a resident of Missoula County.

2. Defendant Holiday Stationstores is registered for-profit corporation with the Montana Secretary of State. Defendant Holiday Stationstores was at all times relevant hereto, registered in Montana.

3. The events that form the basis of this complaint occurred in Missoula, Missoula County, Montana.

4. This Court has jurisdiction over the parties, and the matters alleged herein, and the Fourth Judicial District Court in Missoula County is the proper place of venue for this case to proceed.

## GENERAL ALLEGATIONS

5. From January 2020 until August 2020, Ms. Savanna Everett worked for Holiday Station Stores (hereinafter "Defendant Holiday") at the 605 S. Higgins Avenue location in Missoula, Montana. She had been previously employed by Defendant Holiday at this same location from December 2015 to July 6, 2017.

6. On June 14, 2020 at approximately 2:30am, Ms. Everett was assaulted by customer T.T. while working an 11pm to 3am graveyard shift. Ms. Everett was the sole employee working on the premises at the time.

7. Ms. Everett was wearing a panic button at the time of the assault. The panic button had not been in working condition for a significant amount of time. Defendant Holiday had very recently repaired the panic button, but had not informed Ms. Everett the panic button was repaired.

8. At the time of the incident, T.T. began speaking with Ms. Everett. Ms. Everett needed to conduct work in the back of the store. She tried to get the customer to finish her conversation with her and leave. The customer became agitated and Ms. Everett pointed to the door and told her to leave the store.

9. The customer threatened Ms. Everett. Before Ms. Everett could reach for an alarm or call 911, the customer hit and punched her in the head, slammed her head on the counter, bit her finger, struck her repeatedly with

a metal stool multiple, and stabbed Ms. Everett in the head and face multiple times with the jagged end of a broken broom handle.

10. Ms. Everett initially attempted to defend herself, but failed and curled up on the floor in a fetal position to try and protect herself from the vicious onslaught. When the police arrived, she was covered in her own blood.

11. Another customer who subsequently entered the store attempted to help stop the bleeding from Ms. Everett's head. Ms. Everett was taken to St. Patrick's Hospital emergency room by ambulance. She was treated at the hospital for several lacerations, contusions, and bleeding to her head, and given amoxicillin for the puncture wounds on her finger.

12. Ms. Everett was diagnosed with a concussion and multiple lacerations and deep bruises on her legs, hips, and face.

13. June 24, 2020, 10-days after the attack, Ms. Everett returned to work. She was placed back on the same 11am to 3am graveyard shift. Defendant Holiday failed to assign a second employee was to work with her.

14. Ms. Everrett reported to Defendant Holiday store manager E.C. that she was too afraid to continue working the graveyard shift alone, so Defendant Holiday added a second employee from 12am to 2am on Fridays and Saturdays only.

15. This second employee did not provide support to Ms. Everett. He refused to assist Ms. Everett in dealing with agitated or hostile customers or to assist her in enforcing bans on individuals who were not allowed on the premises. Defendant Holiday declined to provide Ms. Everett with any further support during the graveyard shift.

16. In August 2020, Ms. Everett resigned her position with Defendant Holiday because she was too afraid to continue working during graveyard shifts

without assistance from a second employee for the entire duration of her shifts.

## Prior Incidents

17. Prior to Ms. Everett's assault, Defendant Holiday received numerous complaints from employees at the Higgins location of safety threats.

18. 2018, Holiday Manager A.N. got into a fight with an employee and punched the employee in the face. A.N. was not terminated for this incident; the employee she punched was terminated.

19. Approximately March 2018, Assistant Manager S.C. was regularly harassed by a transient customer. Assistant Manager S.C. reported these incidents and no action was taken by management. The transient customer continued to be allowed in the store. Several other employees told this customer to leave the property due to inappropriate behavior. One incident with this customer prompted a Holiday employee to call the police. However, Holiday management did not enforce a ban on the transient customer.

20. During 2020, Ms. Everett reported incidents of sexual harassment from customers to her supervisors from Defendant Holiday. Defendant Holiday did not provide Ms. Everett with any training on how to report these incidents or how to deal with them.

21. During 2020, Defendant Holiday Assistant Manager M.M. reported to Defendant Holiday Store Manager E.C. her suspicion Defendant Holiday employee E.P. was using methamphetamine at the Higgins Avenue Holiday store front. Defendant Holiday did not take any action regarding this report.

22. Ms. Everett also reported to Defendant Holiday Store Manager E.C. that Holiday employee E.P. made her uncomfortable and that he had yelled at

her in the store. Defendant Holiday took no action regarding E.P. It was discovered later that E.P. was involved in a plot to rob the store.

23. During 2020, an Assistant Manager reported to Defendant Holiday Store Manager E.C. that another employee was selling methamphetamine at the Higgins Avenue Holiday store. Defendant Holiday did not take any action regarding this report.

24. May or June 2020, approximately a week prior to Ms. Everett's assault, an assistant manager was physically beaten by another Holiday employee. At the time this employee was hired, Defendant Holiday knew this employee had a restraining order restricting him from another person.

25. After the incident, the employee was terminated from employment with Defendant Holiday and banned from the premises, but he was then hired at a restaurant across the street, Ciao Mambo. The ex-employee continued to come to the storefront. Defendant Holiday offered no training or instructions for the other Holiday employees on how to deal with the ex-employee or enforce the ban against him.

26. After the assault, Defendant Holiday Store Manager E.C. informed employees they were not talk about the assault. The Assistant Manager who had been assaulted expressed he felt unsafe coming to work.

## Lack of Safety Training

27. Despite employee safety at the Higgins Avenues Holiday store being a reoccurring problem, Defendant Holiday employees were not sufficiently instructed or trained by Defendant Holiday on how to deal with threatening or hostile visitors to the store.

28. Upon hiring by Defendant Holiday, the totality of the training employees received was a safety video to watch demonstrating how to de-escalate a

situation with hostile customers.  Defendant Holiday provided no training on how report hazardous incidents or what to do in the event of a physical attack.

29. Defendant Holiday employees and assistant managers were never shown an employee handbook.

30. Defendant Holiday employees and assistant managers were not trained how to fill out an incident report if an employee was injured.  Defendant Holiday did not keep records of employees injured while on shift or respond to safety concerns.

31. After Ms. Everett's attack, Defendant Holiday management did not discuss the attack with the employees, how to prevent anything similar happening in the future, or provide any additional safety training.

32. Defendant Holiday failed to maintain portable alarm buttons in working condition or to inform employees whether the alarm buttons were in working condition or not.

## APPLICABLE LAW TO ALL COUNTS

33. According to the Montana Supreme Court, the doctrine of *respondeat superior* is when "the consequences of one person's actions may be attributed to another person." Denke v. Shoemaker, 2008 MT 418, ¶ 73, 347 Mont. 322, 198 P.3d 284.  This doctrine will be imposed upon an employer when an employee is acting "within the scope of his or her duties to the employer," which is usually a question of fact, but becomes a question of law for the court when "only one legal inference may reasonably be drawn from the facts." Denke at ¶ 74.

34. A condition that arises from mental or emotional distress is excluded from the definition of injury set forth in Mont. Code Ann. § 39-71-119, and thus

cannot be covered by Worker's Compensation.  <u>Onstead v. Payless</u>, 2000 MT 230, ¶ 30, 301 Mont. 259, 9 P.3d 38.

35. Worker's compensation only covers physical injuries.  Emotional and/or mental trauma that is not the result of physical injury will not be paid by worker's compensation.  <u>Id</u>.

36. Worker's compensation benefits do not cover Ms. Everett's psychological damages and it does not bar her claims against Defendant Holiday.

## COUNT I - NEGLIGENCE

37. Plaintiffs repeat and incorporate by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.

38. "Negligence requires a legal duty, breach of that duty, causation, and damages…. Whether legal duty is owed is a question of law." <u>Gourneau v. Hamill</u>, 2013 MT 300, ¶ 10, 372 Mont. 182, 311 P.3d 760.  "Whether a party owes a legal duty depends largely on whether the allegedly negligent act was foreseeable," <u>Id.</u> at ¶ 12.  Foreseeability is measured "'on a scale of reasonableness dependent upon the foreseeability of the risk involved with the conduct alleged to be negligent.'" <u>Poole v. Poole</u>, 2000 MT 117, ¶ 20, 299 Mont. 435, 1 P. 3d 936 (quoting <u>Lopez v. Great Falls Pre–Release Serv., Inc.</u>, 1999 MT 199, ¶ 27, 295 Mont. 416, 986 P.2d 1081).  "In other words, duty 'is measured by the scope of the risk which negligent conduct foreseeably entails.'" <u>Gourneau</u>, at ¶ 12 (quoting <u>Lopez v. Great Falls Pre-Release Serv., Inc.,</u> 1999 MT 199, ¶ 27, 295 Mont. 416, 986 P.2d 1081).  Therefore, "[t]he question is whether the defendants reasonably could have foreseen that their conduct could have resulted in injuries to the plaintiff,

though 'the specific injury need not be foreseeable.'" Id. (quoting Busta v. Columbus Hops. Corp., 276 Mont. 342, 363, 926 P.2d 122, 134 (1996)).

39. Defendant Holiday had a duty to Ms. Everett to provide her with a safe place to work where she would be free from harm from customers and other employees. It was foreseeable to Defendant Holiday that its failure to take appropriate precautions would result in harm to Ms. Everett and other employees. Defendant Holiday failed to respond appropriately to prior incidents demonstrating the Higgins Avenue Holiday store premises were not safe for employees. Defendant Holiday failed to provide safety training on how to deal with confrontational situations. Defendant Holiday failed to provide alarm buttons that worked and training about how to use the alarm buttons. Defendant Holiday routinely left one employee working alone during the 11am to 3pm graveyard shift, despite Ms. Everett's continued requests for another employee due to safety risks. Further, prior incidents demonstrated a second employee was necessary.

40. Other convenience stores operating in Montana, for the purpose of employee safety, have a minimum of two employees working the night shift simultaneously. Defendant Holiday could reasonably foresee that its conduct would result injury to its employees.

41. Ms. Everett has struggled significantly since the attack. Directly following the attack she experienced confusion, could not tolerate loud noises, and could not maintain conversations with others. Due to her psychological injuries, Ms. Everett became more isolated and her personal relationships suffered. Ms. Everett experienced extreme fear following the assault and did not want to return to work at the store. She became depressed and anxious. Out of fear, she began carrying a knife with her. She experienced difficulty falling asleep and also began sleeping too much due to

depression. She experienced nightmares and lost interest in doing things she had previously enjoyed.

42. In approximately August and September 2020, Ms. Everett began to experience daily headaches, panic attacks, irritability, sleep disturbance, decreased attention, and poor decision making.

43. Ms. Everett's assault has made it difficult for her to work in a customer service environment and to maintain employment at subsequent jobs. Due to her negative associations from the assault she experiences difficulty working behind a counter and operating a cash register. She experiences difficultly working in customer service jobs where she could potentially be exposed to hostile customers.

44. August 2020, Ms. Everrett became employed with Ko Chang in Missoula. September 2020, Ms. Everett left this employment due to not being able to continue work due because she was suffering trauma from the assault. The noise level in the kitchen environment exacerbated the confusion and emotional distress Ms. Everett already suffered as a consequence from the attack.

45. Upon her departure from Ko Chang, Ms. Everett began working for Best Western Hotel in Missoula as a housekeeper. When running cleaning equipment, Ms. Everett experienced loud noise aversion. She left this position in November 2020. Again, Ms. Everett experienced confusion and emotional anguish as a consequence of the attack she suffered while working for Defendant.

46. Defendant Holiday is liable to Plaintiff Savanna Everett for negligence.

### COUNT II - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiffs repeat and incorporate by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.

48. "A cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." Sacco v. High Country Independent Press, Inc., 271 Mont. 209, 232, 896 P.2d 411, 418 (1995).  It is only for the court to decide whether severe or serious emotional distress can be found from the evidence, and for the jury to decide whether in fact it has existed.  Id. 271 Mont. at 233, 896 P.2d at 425.  "[T]he jurors are best situated to determine whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience. In addition, there will doubtless be circumstances in which the alleged emotional injury is susceptible of objective ascertainment by expert medical testimony." Id. Furthermore, evidence of physical injury is no longer considered necessary to determine whether a party had suffered emotional distress. Id.

49. And lastly, the Court has adopted the Restatement (Second) of Tort's definition of "severe or serious" emotional distress. "Emotional distress… includes all highly unpleasant mental reactions….  It is only where it is extreme that the liability arises….  The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.  The intensity and the duration of the distress are factors to be considered in determining its severity." Id., 271 Mont. at 234, 896 P.2d at 426.

50. It was foreseeable to Defendant Holiday that the failure to provide a safe working environment would cause serious or severe emotional distress to

an injured employee. The emotional distress Ms. Everett suffered as a result of the assault was so severe no reasonable person could be expected to endure it.

51. It was foreseeable to Defendant Holiday that having one employee working alone at night, without safety training, without knowledge of operating alarm buttons, on a premises that had a history of unsafe persons engaging in unsafe behavior, would result in an assault that would cause severe emotional distress.

52. September 18, 2020, Ms. Everett obtained a mental health evaluation from Ronald Barker, LCSW (Attachment A). Ms. Everett reported daily headaches, panic attacks five times per week, about two hours of sleep per night, waking up approximately four or five times a night, and being able to eat approximately one meal per day. Mr. Barker's assessment concluded Ms. Everett suffered from severe anxiety, severe depression, post-traumatic stress disorder, and that she was using substances to curtail exacerbated symptoms of trauma from the assault. Mr. Barker summarized the assault had exacerbated trauma Ms. Everett had experienced during her childhood and increased her overall trauma response.

53. November 11, 2020 Ms. Everett obtained a neuropsychological evaluation from Dr. Jackie Day (Attachment B).

54. Dr. Day determined Ms. Everett was clearly struggling psychologically. She endured significant and severe trauma from the assault. The trauma from the assault exacerbated the neglect, as well as abuse that had occurred in her younger years. Dr. Day concurred with Mr. Barker's assessment of Ms. Everett's pre-morbid PTSD symptoms being exacerbated by the assault. She concluded Ms. Everett should remain in therapy to continue to address her trauma symptoms.

55. Defendant Holiday is liable to Plaintiff Savanna Everett for negligent infliction of emotional distress.

## COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56. Plaintiffs repeat and incorporate by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.

57. "[A]n independent cause of action for intentional infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." Sacco v. High Country Independent Press, Inc., (1995) 271 Mont. 209, 237, 896 P.2d 422. It is only for the court to decide whether severe or serious emotional distress could be found from the evidence, and for the jury to decide whether in fact it has existed. Id. at 233.

58. Furthermore, evidence of physical injury is no longer considered necessary to determine whether a party had suffered emotional distress. Id. And lastly, the Court has adopted the Restatement (Second) of Tort's definition of "severe or serious" emotional distress. " Emotional distress… includes all highly unpleasant mental reactions…. It is only where it is extreme that the liability arises…. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." Id. at 234.

59. It was foreseeable to Defendant Holiday that the failure to provide a safe working environment would cause serious or severe emotional distress to an injured employee. The emotional distress Ms. Everett suffered as a

result of the assault was so severe no reasonable person could be expected to endure it.

60. Defendant Holiday acted intentionally when it failed to take precautions to protect the safety of its employees, such as failing to provide a second person during night shifts and failing to ensure the employees had access to working alarm buttons and training and information about how to use the alarms.  Further, Defendant Holiday acted intentionally when after Ms. Everett's assault it failed to provide a second employee for the duration of her shift and failed to provide a second employee capable of providing her with assistance when dealing with agitated or hostile customers.

61. Ms. Everett's mental health evaluation and her neuropsychological evaluation demonstrate the emotional harm she suffered as a result of Defendant Holiday's acts and omissions in failing to provide a safe working environment.

62. Defendant Holiday is liable to Plaintiff Savanna Everett for intentional infliction of emotional distress.

## **COUNT IV - PUNITIVE DAMAGES**

63. Reasonable punitive damages may be awarded when a defendant is found to have acted with malice.  Mont. Code. Ann. § 27-1-221.  Malice is present when there is knowledge of facts or intentionally disregarding facts create a high probability of injury to the plaintiff….  Mont. Code. Ann. § 27-1-221(1).

64. Defendant knew and understood the work environment at the Higgins storefront created a high probability of injury to Ms. Everett and other employees working there.  The failure to engage in reasonable precautions also constituted negligent disregard of the high probability of injury to Ms. Everett.

65. Defendant's negligence was of such character as to entitle Ms. Everett to punitive damages under Montana law, in addition to compensatory damages for emotional and psychological injuries and economic loss.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Savanna Everett moves this Court to grant judgment as follows:

1. Compensatory damages as determined by the Court to be just and necessary under the circumstances;
2. Exemplary and punitive damages as allowed by law;
3. Award all fees incurred litigating this matter, including but not limited to court costs, attorney's fees, and attorney's costs;
4. For prejudgment interest;
5. Any such other relief the Court deems just and proper.

RESPECTFULLY submitted this 9th day of September, 2021.

_____
Kathleen A. Molsberry, Esq.
Lowy Law, PLLC
*Attorney for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues as a right by jury, pursuant to Mont. Rule of Civ. Pro. 15.

RESPECTFULLY submitted this 9th day of <u>September</u>, 20<u>21</u>.

1
2
3          _____
4          Kathleen A. Molsberry
           Lowy Law, PLLC
           *Attorney for Plaintiffs*

COMPLAINT AND DEMAND FOR JURY TRIAL                                    15 of 15