IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SAVANNA EVERETT,<br><br>Plaintiff,<br><br>vs.<br><br>HOLIDAY STATIONSTORES,<br><br>Defendant. | CV 21–113–M–DWM<br><br>OPINION<br>and ORDER |

This lawsuit arises out of an assault that occurred while Plaintiff Savanna Everett was working for Defendant Holiday Stationstores ("Holiday"). Holiday seeks to dismiss the case on the grounds that Montana's Workers' Compensation Act provides Everett's exclusive remedy. (Doc. 11.) Based on the current record and the early stage of this litigation, Everett may proceed on most of her claims.

## BACKGROUND

On June 14, 2020, at approximately 2:30 a.m., Everett was assaulted by customer Tonnisha Triplett while working the graveyard shift at Holiday's 605 S. Higgins Avenue location in Missoula, Montana. (Doc. 19 at ¶ 4(d).) Everett was the sole employee working on the premises at the time. (*Id.*) During the assault, Triplett hit and punched Everett in the head, slammed her head on the counter, bit her finger, struck her repeatedly with a metal stool, and stabbed her in the head and

1

face multiple times with the jagged end of a broken broom handle. (*Id.* ¶ 4(e).) Everett initially attempted to defend herself but eventually curled up on the floor to try and protect herself from the attack. (*Id.* ¶ 4(f).) The police arrived and arrested Triplett, who was subsequently charged with felony assault with a weapon and criminal mischief. (*Id.* ¶ 4(g).)

As a result of the assault, Everett suffered both physical injuries and psychological damage and trauma. (*Id.* ¶ 4(l).) Physically, Everett suffered a concussion, lacerations, and bruising. (*Id.* ¶ 4(h).) Mentally, during the physical attack she feared for her life. In the time after her hospital release, Everett experienced confusion, could not tolerate loud noises, and became isolated. (Doc. 3 at ¶ 41.) She also became depressed and anxious and had trouble sleeping. (*Id.*) Everett ultimately left her job at Holiday in August 2020, (Doc. 19 at ¶ 4(k)), because she was too afraid to continue working the graveyard shift, (Doc. 3 at ¶ 16). Holiday was insured at the time of the incident and Everett filed a workers' compensation claim and received benefits based on that claim. (Doc. 19 at ¶ 4(p).)

On September 9, 2021, Everett sued Holiday in state court, alleging negligence (Count 1), negligent infliction of emotional distress (Count 2), intentional infliction of emotional distress (Count 3), and punitive damages (Count 4). (Doc. 3.) On October 5, 2021, Holiday removed the case to this Court, (Doc. 1), and now seeks judgment on the pleadings on the ground that Everett's

negligence claims are barred by workers' compensation exclusivity and her intentional tort claims are inadequately pled, (Doc. 12). A motions hearing was held on December 20, 2021 where the parties argued their respective positions on the application of Montana law to these facts.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, assuming the truth of the allegations in the non-moving party's pleadings, the moving party is entitled to judgment as a matter of law." *Rubin v. United States*, 904 F.3d 1081, 1083 (9th Cir. 2018). As with a motion under Rule 12(b)(6), a successful Rule 12(c) motion must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The determination of a Rule 12(c) motion is limited to the pleadings, *see* Fed. R. Civ. P. 12(d), including attached documents, *see* Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ANALYSIS

The Montana Constitution sets forth the basis for the workers' compensation exclusivity provision:

3

> **The administration of justice.** Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. *No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state.* Right and justice shall be administered without sale, denial, or delay.

Mont. Const. art. II, § 16 (emphasis added). This provision is then implemented through the Workers' Compensation Act, *see* Mont. Code Ann. §§ 39–71–101 to –4004, which provides: "an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act," § 39–71–411. As explained by the Montana Supreme Court

> In simple terms, this means that when an employee is injured in the work place due to negligence or accident, his remedy is exclusive to the Workers' Compensation Act. Common law damages are not available under Section 39–71–411, MCA, for injuries negligently or accidentally inflicted by an employer. Negligence claims should be dismissed on this ground.

*Walters v. Flathead Concrete Prods., Inc.*, 249 P.3d 913, 916 (Mont. 2011) (quotation marks omitted). The Act does not apply, however, in all circumstances. Here, for example, Everett argues the Act does not bar her claims because she suffered mental injury and Holiday acted intentionally.

I.  **Negligence Claims**

Holiday first argues that Everett's negligence and negligent infliction of emotional distress claims (Counts 1 and 2) are barred because Everett's injuries—

4

both mental and physical—arose from the physical assault. While Holiday may be able to prove that later in this litigation, the pleadings, construed in Everett's favor, cannot be read so narrowly.

The Workers' Compensation Act defines "injury" as "internal or external physical harm to the body that is established by objective medical findings." § 39–71–119(1)(a). It explicitly states that "injury . . . does not mean a physical or mental condition arising from[] emotional or mental stress." § 39–71–119(3)(a). The Montana Supreme Court has therefore held that "because an emotional injury resulting from work-related mental or emotional stress—known as a 'mental-mental' injury—is not an 'injury' as defined in § 39–71–119, MCA, and is not compensable under the Act, the exclusive remedy provision [does] not apply." *Maney v. La. Pac. Corp.*, 15 P.3d 962, 966 (Mont. 2000). As a result, "a plaintiff with a work-related 'mental-mental' injury may bring a tort action against his or her employer to recover damages." *Id.*; *see also Stratemeyer v. Lincoln Cnty.*, 915 P.2d 175, 181–82 (Mont. 1996).

But matters get truly complicated where, as here, the employee suffers *both* mental and physical injury. As discussed above, "mental-mental" injuries do not fall under the Act because they fall outside the Act's definition of injury. *See Maney*, 15 P.3d at 966. Likewise, "mental-physical" injuries, which also result from work-related emotional or mental stress, do not fall within the Act's exclusive

remedy provision. *Id.*; *see also Kleinhesselink v. Chevron, U.S.A.*, 920 P.2d 108, 109–11 (Mont. 1996). But if an employee suffers a compensable physical injury that results in mental injury—a "physical-mental" injury, such injury generally falls within the purview of the Act. *See Stratemeyer*, 915 P.2d at 180; *Onstad v. Payless Shoesource*, 9 P.3d 38, 43 (Mont. 2000) *overruled on other grounds by Johnson v. Costco Wholesale*, 152 P.3d 727 (Mont. 2007). Accordingly, the question is whether the mental injuries alleged by a plaintiff "arise from," *Yarborough v. Mont. Mun. Ins. Auth.*, 938 P.2d 679, 683 (Mont. 1997), or have "some rational nexus" to, *Maney*, 5 P.3d at 968, a compensable physical injury.

Holiday argues that workers' compensation exclusivity applies here because the factual allegations in Everett's complaint give rise to both physical and mental injuries and "*[b]ut for* Everett's assault and the covered injuries she sustained, her emotional distress damages would not have arisen." (Doc. 12 at 19.) Put simply, Holiday argues Everett's injuries are "physical-mental."

As a preliminary matter, the presence of *both* physical and mental injuries does not, by itself, doom Everett's claims. In *Yarborough*, a firefighter suffered first and second degree burns on his hands and face when a home exploded. 938 P.2d at 680. He was also diagnosed with PTSD "as a result of the accident." *Id.* His workers' compensation claim based on his PTSD was denied because the Workers' Compensation Court determined his PTSD arose from "emotional or

6

mental stress." *Id.* at 681. The Montana Supreme Court agreed, concluding that "[a]lthough Yarborough did suffer burns to his face and hands, no medical expert testified that Yarborough's PTSD directly resulted from those physical injuries. Rather, the medical testimony linked Yarborough's PTSD only to the house-fire explosion itself." *Id.* at 684. His injury was therefore "mental-mental," placing his claim outside of the workers' compensation regime. *Id.* And, as made clear at oral argument, Holiday recognizes that *Yarborough* poses a challenge.

Similarly, in *Onstad*, an employee was sexually assaulted by a customer while working at a shoe store. 9 P.3d at 40. She alleged PTSD as a result of the incident. *Id.* at 41. Although the employee was thrown to the floor and ejaculated upon, *id.* at 40, the only physical injury she suffered was "a visibly reddened neck where [her assailant] grabber her," *id.* at 43. Comparing the case to *Yarborough*, the Court noted that while there was testimony that Onstad's trauma would not have been as bad if she had not been physically touched, "none of the evidence in the record connects Onstad's posttraumatic stress to the post-assault red marks on her neck. Instead, the evidence clearly indicated that Onstad's trauma arose from the mental stress of contending with [the] attack." *Id.*

Pursuant to *Yarborough* and *Onstad*, the mere fact Everett was physically injured is not dispositive.[1] Holiday maintains, however, that unlike the situation in both *Yarborough* and *Onstad*, the evidence here connects Everett's mental state to the physical assault itself. While this argument does find some support in the record, it is not the only reasonable reading of the evidence at this stage of the proceeding.

Everett received two mental health evaluations, one from Ronald Barker, LCSW and one from Jackie Day, Ph.D. (*See* Doc. 3-1.) Because these evaluations were attached to her complaint, (*see id.*), and referenced therein, (*see* Doc. 3 at ¶¶ 52–54), they may be considered here. *Ritchie*, 342 F.3d at 908. As summarized in Everett's complaint, Barker concluded that Everett suffered from severe anxiety, depression, and PTSD and that "the assault exacerbated" Everett's existing trauma. (Doc. 3 at ¶ 52.) Likewise, Dr. Day generally concluded that Everett "endured significant and severe trauma from the assault" that once again exacerbated her existing condition. (*See id.* ¶ 54.) While Holiday is correct that Dr. Day's report also addresses whether the physical trauma to Everett's head impacted her cognitive ability, (*see* Doc. 3-1 at 16–17), neither evaluation addresses whether

---

[1] At the motion hearing, both parties discussed Everett's workers' compensation claim and recovery in greater detail than in their filings up to this point. But the only facts in the record at this point are that such a claim was made and Everett received benefits. (Doc. 19 at ¶ 4(p).)

Everett would have experienced mental or emotional trauma had Triplett not actually touched her. And, both evaluations use the words "assault" and "trauma" imprecisely, referencing both mental and physical harm. As does Everett herself. For example, Everett's complaint alleges that she "has struggled significantly since the attack," (Doc. 3 at ¶ 41), and has suffered confusion, isolation, depression, anxiety, insomnia, headaches, panic attacks, irritability, decreased focus, and poor judgment, (*id.* ¶¶ 41–42). She further alleges that the "assault has made it difficult for her to work in a customer service environment and to maintain employment at subsequent jobs," (*id.* ¶ 43), or positions that expose her to loud noises, (*id.* ¶¶ 44–45). While a reasonable inference is that she suffered these injuries because of the physical assault, equally reasonable is that Everett, like *Onstad*, also experienced purely mental trauma based on the "mental stress of contending with [the] attack." 9 P.3d at 43. Such a claim would not be barred by the Act.

Moreover, in *Onstad*, the Court specifically noted the "absence of any factual dispute." *Id.* Here it is disputed whether Everett's injuries are "mental-mental," "mental-physical," "physical-mental," or a mix of all three. While Everett may fail to carry her burden of showing a factual dispute later, her pleadings are sufficient to maintain her negligence claim at this point.

**II.     Intentional Torts**

9

Holiday further argues that Everett's intentional tort claims (Counts 3 and 4) fail to allege sufficient facts for recovery. As intimated above, workers' compensation exclusivity does not apply to intentional torts. § 39–71–413. Nevertheless, to succeed on such a claim, a plaintiff must show "(1) an intentional and deliberate act specifically and actually intended to cause injury; and (2) actual knowledge of the injury's certainty." *Alexander v. Bozeman Motors, Inc.*, 234 P.3d 880, 886 (Mont. 2010); *see also* § 39–71–413(3). Allegations of "ordinary negligence"—such as the failure to provide safe working conditions or to comply with state laws and federal regulations—are insufficient. *Wise v. CNH Am., LLC*, 142 P.3d 774, 777 (Mont. 2006).

As argued by Holiday, the facts of *Alexander* provide useful guidance here. In *Alexander*, two employees were injured when a gas stove leaked propane into a prefabricated building and caused a build up of carbon monoxide. 234 F.3d at 882–83. Burt Ostermiller lost consciousness while working in the building in early November 2003, despite having previously warned his employer of the issue. *Id.* at 883. Subsequently, Michael Alexander began working in the building and while he complained about headaches and an upset stomach to his employer, "nothing was done about the stove." *Id.* Ostermiller never returned to work after losing consciousness and Alexander's condition deteriorated to where he could no longer return to work. *Id.* They sued. *Id.* The Montana Supreme Court concluded that

10

while Ostermiller failed to show his employer had the "actual knowledge" of "certain injury" required by the statute, there were sufficient facts to raise a genuine dispute regarding that knowledge and Alexander's injury. *Id.* at 886, 889. In so concluding, the Court explained:

> When Bozeman Motors sent Alexander to work in the Four Corners office, it had actual knowledge of Ostermiller's injury. Moreover, it is alleged that Bozeman Motors did not disclose Ostermiller's injury to Alexander, nor did it take any measures to investigate the cause of his injuries. Furthermore, the Employees allege that Alexander complained to Bozeman Motors about the contaminated air in the office, and told them he was becoming sickened by it. The fact that Ostermiller had previously raised these same complaints to Bozeman Motors, and then lost consciousness in the Four Corners office, when viewed in a light most favorable to the Employees, does raise a genuine issue of material fact as to whether Bozeman Motors had actual knowledge that requiring Alexander to work in the same office, without investigating or addressing the alleged contamination from the stove, was "certain" to cause him injury.

*Id.* at 886. The Court went on to "hold that deliberate and intentional conduct may be inferred from factual allegations indicating that an employer knew an employee was being harmed, failed to warn the employee of the harm, and intentionally continued to expose the employee to the harm." *Id.* at 889.

Here, Everett alleges numerous complaints about how Holiday handled safety issues prior to and after her June 2020 assault. Prior to the assault, Holiday received numerous complaints from employees at the Higgins location regarding "safety threats." (Doc. 3 at ¶ 17.) In 2018, for example, one employee assaulted another, (*id.* ¶ 18), and an assistant manager was "regularly harassed by a transient

11

customer," (*id.* ¶ 19).  In 2020, Everett reported multiple instances of sexual harassment from customers.  (*Id.* ¶ 20.)  Everett also reported potential drug use and discomfort related to a fellow employee.  (*Id.* ¶¶ 21–22.)  Also in 2020, an employee was using methamphetamine and attacked another employee.  (*Id.* ¶¶ 23–24.)  Even though the attacker was terminated, he continued to come to the store and the other employees were told not to discuss the incident.  (*Id.* ¶¶ 25–26.)

Following the assault, Everett was placed back on the graveyard shift and told the store manager that she was "too afraid to continue working the graveyard shift alone." (Doc. 3 at ¶¶ 13–14.)  As a result, Holiday added a second employee, but only from 12am to 2am on Fridays and Saturdays, (*id.* ¶ 14), and that employee refused to help Everett with agitated customers, (*id.* ¶ 15).  Everett was too afraid to keep working and quit.  (*Id.* ¶ 16.)  Neither before nor after the assault did employees receive training on how to deal with hostile customers or what to do in the event of a physical attack.  (*Id.* ¶¶ 28–31.)  Holiday also failed to maintain proper alarm buttons and inform employees of the status of such alarms.  (*Id.* ¶ 32.)

Based on the above, Everett seems to fall in between Ostermiller and Alexander.  Like Ostermiller, the concerns underlying Everett's earlier complaints were unrealized insofar as neither the pleadings nor the attachments specifically state that any employees were physically injured by a transient customer prior the June 2020 assault.  Nor do they indicate Everett was unable to work or experienced

mental distress as a result of prior incidents. Thus, the "harm" identified by Everett during that timeframe was, at best, speculative. Accordingly, Everett's claim of intentional conduct is not supported insofar as it is based on an injury that occurred on or before June 2020.

Like Alexander, however, the prospects of that harm arguably became concrete considering the above evidence once Everett was physically assaulted. While Holiday argues she pled no injury after that point, (Doc. 12 at 21), Everett alleges mental distress that manifested specifically because she was not given proper support or training after the assault. Thus, the resolution of Everett's intentional tort claims turns on the definition of "harm." If "harm" is limited to physical assault by a customer, such a "harm" was not "certain" at any point in this record. Consistent with Holiday's position, "[a] risk or possibility of injury does not establish actual knowledge of the injury's certainty as required by the statute." *Harris v. Dep't of Corrections*, 294 P.3d 382, 388 (Mont. 2013). While Holiday's decision to keep Everett on the graveyard shift undeniably exposed her to a risk of physical harm, it apparently did not expose her to certain physical harm. *See id.* at 389 (distinguishing between a "high degree of risk" and "a high degree of harm"). Thus, under that conceptualization, Everett's claim would fail.

But construing "harm" to include Everett's mental distress, she has pled a viable claim. Following the June 2020 assault, Holiday knew Everett was

experiencing fear and anxiety in having to work alone during the graveyard shift, failed to provide any support or training to aid her, and continued to schedule her for those shifts despite the certainty that they were causing mental distress. Construing all the facts in the complaint as true, Everett has presented a prima facie case that Holiday deliberately and intentionally caused an injury in the form of emotional distress. This portion of her claim may therefore proceed.

## Conclusion

Based on the above, IT IS ORDERED that Holiday's motion to dismiss (Doc. 11) is GRANTED as to Everett's intentional tort claims (Counts 3 and 4) to the extent she seeks to recover for injuries sustained on or before June 14, 2020. It is DENIED in all other respects and the remainder of Everett's claims survive.

DATED this 21st day of December, 2021.

_____
Donald W. Molloy, District Judge
United States District Court