IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SAVANNA EVERETT,<br><br>Plaintiff,<br><br>vs.<br><br>HOLIDAY STATIONSTORES,<br><br>Defendant. | CV 21–113–M–DWM<br><br>OPINION<br>and ORDER |

This lawsuit arises out of an assault that occurred while Plaintiff Savanna Everett was working as a gas station attendant for Defendant Holiday Stationstores ("Holiday"). Holiday seeks summary judgment on the ground that Everett's negligence-based claims (Counts 1 and 2) are barred by workers' compensation exclusivity under Montana Code Annotated § 39–71–411. (Doc. 27.) Because Holiday is correct, its motion is granted.

### BACKGROUND

The following facts are undisputed unless otherwise noted,[1] (*see* Docs. 19, 29, 35), and viewed in the light most favorable to Everett, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

---

[1] The parties dispute whether Everett complied with certain discovery obligations. (*See* Docs. 38-1, 39.) This dispute does not impact the merits analysis.

1

I.  **The Assault**

On June 14, 2020, at approximately 2:30 a.m., Everett was assaulted by customer Tonnisha Triplett while working alone during the graveyard shift at Holiday's 605 S. Higgins Avenue location in Missoula, Montana. (Doc. 19 at ¶ 4(d).) A few hours into Everett's shift, Triplett entered the store and loitered without purchasing anything. (Doc. 35 at ¶ 3.) After about 45 minutes, Everett asked Triplett to make her purchases and leave and Triplett stated that she did not have any money. (*Id.* ¶ 4.) Everett once again asked Triplett to leave and said that the police would be called if she did not do so. (*Id.*) Triplett began yelling and entered the "employee only" area, attacking Everett. (*Id.*) During the assault, Triplett hit and punched Everett in the head, slammed Everett's head on the counter, bit Everett's finger, struck Everett repeatedly with a metal stool, and stabbed Everett in the head and face multiple times with the jagged end of a broken broom handle. (Doc. 19 at ¶ 4(e).) The attack lasted about 50 seconds. (Doc. 35-3 at 1.) The police arrived and arrested Triplett, who was subsequently charged with felony assault with a weapon and criminal mischief. (Doc. 19 at ¶ 4(g).)

II. **Everett's Injuries and Medical Care**

Immediately after the assault, Everett was taken to the emergency room and treated for a bite, lacerations, and a concussion. (Doc. 31-4 at 3.) On June 22, 2020, Everett went to Partnership Health for a follow-up. (Doc. 31-5.) At that

2

appointment, Everett reported "no anxiety, flashbacks [or] Hyperviligance following event" and indicated being "bored" and "[e]xcited to go back to work," (*id.* at 1, 3), which Everett did 10 days later, (Doc. 35 at ¶ 13). On August 26, 2020, Everett returned to Partnership Health and was placed on medication for PTSD symptoms. (*See* Doc. 31-9; Doc. 35 at ¶ 20.) Everett reported daily headaches, memory problems, and confusion and appeared anxious, thin, and tearful. (Doc. 31-9 at 3–4.) Although appearing healthier in terms of both weight and mood at an appointment in April 2021, Everett continues to experience issues associated with a concussion and PTSD. (*See* Doc. 31-10.) Everett's head injury has caused persistent and ongoing cognitive problems with retaining information, difficulty speaking, and visual and auditory hallucinations. (*See* Doc. 35 at ¶ 15.)

On August 31[2] and September 7, 2020, Everett saw Ronald Barker, LCSW for a mental health assessment. (*See* Doc. 3-8 at 1–7.) Barker diagnosed Everett with PTSD, anxiety, and depression based on childhood trauma that was "exacerbated" by the June 2020 attack. (*Id.* at 7.) Everett began to see Barker weekly in September 2020 and that treatment continues to the present. (Doc. 35 at

---

[2] The record indicates that Everett first saw Barker on August 22. (*See* Doc. 35 at ¶¶ 18, 20; Doc. 31-7 at 7.) While Holiday insinuates that this is the genesis of Everett's August 26 PTSD report to Partnership, that intimation has no bearing on the present motion.

3

¶¶ 21, 25.) Barker has recommended that Everett attend an inpatient PTSD treatment program. (*See id.* ¶¶ 21, 39.)

In November 2020, Everett underwent a Neuropsychological Evaluation by Jacqueline Day, Ph.D. (*See* Doc. 3-1 at 9–17.) Dr. Day agreed with Barker's "assessment of pre-morbid PTSD symptoms being exacerbated by the brutal assault." (*Id.* at 17.) In 2022, Holiday had Everett independently evaluated by Dr. William Stratford. (*See* Doc. 35-2.) Dr. Stratford also found that Everett "had pre-existing PTSD from physical and emotional trauma," as well as depression and anxiety. (*Id.* at 7.)

### III. Workers' Compensation Coverage

Holiday was insured at the time of the incident and Everett filed a workers' compensation claim and received benefits based on that claim. (Doc. 19 at ¶ 4(p).) Although Everett has not paid out-of-pocket for any post-assault care, (*see* Doc. 35-4 at 7), the parties dispute whether it has all been covered or will be covered by Holiday's workers' compensation carrier. For example, workers' compensation did not pay for Dr. Day's evaluation and has not indicated whether it will pay for certain future care, including in-patient PTSD treatment. (*See* Doc. 35-1 at 1.) It is undisputed, however, that workers' compensation has covered all the costs associated with Everett's physical injuries, (*see* Doc. 31-6 at 1), and Everett's weekly sessions with Barker, (*see* Doc. 35 at ¶ 18).

4

## IV. Present Case

On September 9, 2021, Everett sued Holiday in state court, alleging negligence (Count 1), negligent infliction of emotional distress (Count 2), intentional infliction of emotional distress (Count 3), and punitive damages (Count 4). (Doc. 3.) On October 5, 2021, Holiday removed the case to this Court, (Doc. 1), and in November 2021 sought judgment on the pleadings on the bases that Everett's negligence claims were barred by workers' compensation exclusivity and the intentional tort claims were inadequately pled, (Doc. 12). Following a hearing, Holiday's motion was granted as to Everett's intentional tort claims (Counts 3 and 4) to the extent Everett sought to recover for injuries sustained on or before June 14, 2020. (*See* Doc. 23.) The motion was denied on all other grounds, including Holiday's argument that Everett's negligence claims (Counts 1 and 2) were barred by workers' compensation exclusivity as a matter of law. (*Id.*) More specifically, this Court concluded that "[w]hile Everett may fail to carry [the] burden of showing a factual dispute later, [the] pleadings are sufficient to maintain [a] negligence claim at this point." (*Id.* at 9.) Holiday filed the present motion for summary judgment on June 6, 2022. (Doc. 27.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). Facts are material if they have the potential to affect the outcome of the case and there is sufficient evidence for a jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Courts must view all the evidence and draw all justifiable inferences in favor of the nonmoving party without weighing evidence or making credibility determinations. *Id.* at 255.

## ANALYSIS

The Montana Constitution sets forth the basis for the workers' compensation exclusivity provision:

> **The administration of justice.** Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. *No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state.* Right and justice shall be administered without sale, denial, or delay.

Mont. Const. art. II, § 16 (emphasis added). This provision is then implemented through the Workers' Compensation Act (the "Act"), *see* Mont. Code Ann. §§ 39–71–101 to –4004, which provides: "an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act," § 39–71–411. As explained by the Montana Supreme Court,

6

> In simple terms, this means that when an employee is injured in the work place due to negligence or accident, his remedy is exclusive to the Workers' Compensation Act. Common law damages are not available under Section 39–71–411, MCA, for injuries negligently or accidentally inflicted by an employer. Negligence claims should be dismissed on this ground.

*Walters v. Flathead Concrete Prods., Inc.*, 249 P.3d 913, 916 (Mont. 2011) (quotation marks omitted). "The exclusive remedy is the benefit which employers are to receive from the *quid pro quo* compromise when they provide workers' compensation insurance coverage." *Id.* Nevertheless, if an injury is not covered by the Act, the requisite *quid pro quo* between the employer and employee is missing and the exclusive remedy rule does not apply. *Stratemeyer v. Lincoln Cnty.*, 915 P.2d 175, 180 (Mont. 1996).

Consistent with the above, the primary dispute in this case is whether Everett's psychological injuries fall within the Act, which defines "injury" as "internal or external physical harm to the body that is established by objective medical findings." § 39–71–119(1)(a). The Act explicitly states that "injury . . . does not mean a physical or mental condition arising from[] emotional or mental stress." § 39–71–119(3)(a). The Montana Supreme Court has therefore held that "because an emotional injury resulting from work-related mental or emotional stress—known as a 'mental-mental' injury—is not an 'injury' as defined in § 39–71–119, MCA, and is not compensable under the Act, the exclusive remedy provision [does] not apply." *Maney v. La. Pac. Corp.*, 15 P.3d 962, 966 (Mont.

7

2000); *see also* § 31–71–105(6)(a). As a result, "a plaintiff with a work-related 'mental-mental' injury may bring a tort action against his or her employer to recover damages." *Maney*, 15 P.3ds at 966; *see Stratemeyer*, 915 P.2d at 181–82.

Likewise, "mental-physical" injuries, which also result from work-related emotional or mental stress, do not fall within the Act's exclusive remedy provision. *Maney*, 15 P.3d at 966; *see also Kleinhesselink v. Chevron, U.S.A.*, 920 P.2d 108, 109–11 (Mont. 1996). But if an employee suffers a compensable physical injury that results in mental injury—a "physical-mental" injury—such injury generally falls within the purview of the Act. *See Stratemeyer*, 915 P.2d at 180; *Onstad v. Payless Shoesource*, 9 P.3d 38, 43 (Mont. 2000) *overruled on other grounds by Johnson v. Costco Wholesale*, 152 P.3d 727 (Mont. 2007). Accordingly, the question is whether the mental injuries alleged by a plaintiff "arise from," *Yarborough v. Mont. Mun. Ins. Auth.*, 938 P.2d 679, 683 (Mont. 1997), have "some rational nexus" to, *Maney*, 5 P.3d at 968, or are "a result of," *Onstad*, 9 F.3d at 43, a compensable physical injury.

Holiday moves for summary judgment on the basis that Everett seeks to recover negligence-related damages for injuries covered under the Act and for which Holiday's workers' compensation carrier has assumed liability and paid benefits. Put simply, Holiday argues Everett's injuries are "physical-mental." Holiday's argument is threefold: (1) because Everett's negligence-based claims

8

arise out of the same factual nexus as the physical injuries, they are barred by the Act's plain language; (2) Holiday has presented objective medical evidence that Everett's emotional distress is a result of Everett's covered physical injuries; and (3) Everett received the Act's *quid pro quo* benefit and is therefore bound by its limitations. Because Holiday's second argument is persuasive, summary judgment is granted in its favor.

## I.  Factual Nexus

Holiday first argues that "exclusivity bars emotional distress claims that arise out of the same facts that caused the employee's covered injury." (Doc. 28 at 18.) This argument was previously rejected at the motion to dismiss stage. (*See* Doc. 23 at 6–8.) As this Court stated, "the presence of *both* physical and mental injuries does not, by itself, doom Everett's claims." (*Id.* at 6; *see also id.* at 8 ("Pursuant to *Yarborough* and *Onstad*, the mere fact Everett was physically injured is not dispositive.").) As a result, Holiday's first argument lacks merit.

## II.  Objective Medical Evidence

Holiday further argues that the objective medical evidence shows that Everett's emotional distress is directly related to Everett's physical injuries, making it "physical-mental." In response, Everett argues that "the record demonstrates Everett's current PTSD is the result of emotional and mental stress

9

incurred during the assault," which would make Everett's injury "mental-mental." (Doc. 37 at 16.) Holiday's position is supported by the undisputed record.

Everett is correct that the Montana Supreme Court has held that workers' compensation exclusivity is not triggered in the *absence* of medical evidence connecting an employee's mental and physical injuries. For example, in *Yarborough*, a firefighter suffered first and second degree burns on his hands and face when a home exploded. 938 P.2d at 680. He was also diagnosed with PTSD "as a result of the accident." *Id.* His workers' compensation claim based on his PTSD was denied because the Workers' Compensation Court determined his PTSD arose from "emotional or mental stress." *Id.* at 681. The Montana Supreme Court agreed, concluding that "[a]lthough Yarborough did suffer burns to his face and hands, no medical expert testified that Yarborough's PTSD directly resulted from those physical injuries. Rather, the medical testimony linked Yarborough's PTSD only to the house-fire explosion itself." *Id.* at 684. His injury was therefore "mental-mental," placing it outside of the workers' compensation regime. *Id.*

Similarly, in *Onstad*, an employee was sexually assaulted by a customer while working at a shoe store. 9 P.3d at 40. She alleged PTSD as a result of the incident. *Id.* at 41. Although the employee was thrown to the floor and ejaculated upon, *id.* at 40, the only physical injury she suffered was "a visibly reddened neck where [her assailant] grabber her," *id.* at 43. Comparing the case to *Yarborough*,

10

the Court noted that while there was testimony that Onstad's trauma would not have been as bad if she had not been physically touched, "none of the evidence in the record connects Onstad's posttraumatic stress to the post-assault red marks on her neck. Instead, the evidence clearly indicated that Onstad's trauma arose from the mental stress of contending with [the] attack. Payless simply did not produce any evidence that Onstad's mental condition was the result of a physical injury during her attack." *Id.*

Here, unlike in *Yarborough* and *Onstad*, the undisputed medical evidence connects Everett's mental condition to the covered physical injuries. Barker found that Everett's PTSD was the direct result of Everett being "hit repeatedly with a metal stool." (Doc. 35 at ¶ 28.) And, when asked whether the criteria for PTSD was met because Everett was physically assaulted, Barker confirmed, "With a metal—yes." (*Id.*) Moreover, while Barker recognized Everett's pre-existing trauma, he could not identify a "separate" injury, aside from Everett's physical injuries, that caused the resurgence of Everett's PTSD. (Doc. 31-7 at 5, 24.) More specifically, Barker stated that the triggering event was Everett being struck by the stool: "[I]n my best judgment, and that's all it is, is a hypothesis, when the PTSD was triggered was the initial blow." (*Id.* at 6, 8.) Thus, Everett's own treatment provider connects Everett's mental and physical trauma. Likewise, Dr. Stratford's

11

independent conclusion was that "it is not possible to sort out the emotional trauma from the physical trauma of this incident." (Doc. 35-2 at 7.)

Consistently, Everett's deposition testimony emphasizes the role the physical injuries sustained during the attack played in Everett's mental health. For example, Everett admitted to being accustomed to being yelled at by customers but explained that it was the actual physical attack and the fact that Everett was unable to prevent physical injury that made this incident unique. (*See* Doc. 31-3 at 5.) When asked "at what point did you initially begin to fear for your life?" Everett answered, "As soon as [Triplett] hit me with the stool." (*Id.* at 9.) Everett also testified: "I definitely did not want to die being stabbed with a broom handle." (*Id.* at 11.) Finally, Everett voiced a fear that Triplett might have transmitted HIV by biting Everett, (*see* Doc. 35 at ¶ 19), and Everett might have permanent brain damage from being physically hit by the stool, (*id.* ¶ 11). That Everett's own testimony intertwines the mental and physical injuries at issue indicates that those injuries are "physical-mental" and subject to workers' compensation exclusivity.

Everett's responding arguments and evidence are insufficient to raise a genuine dispute as to this issue. Everett seems to argue that because the incident resulted in *both* physical and mental trauma, exclusivity attaches only to the former. But, as discussed above, that is not the test for the Act's application; rather, the dispositive inquiry is whether the record connects the mental trauma to

12

the physical trauma and whether there is evidence that Everett's "mental condition is a result of a physical injury [sustained] during the attack." *Onstad*, 9 P.3d at 43. Such evidence exists here as discussed above. Contrary to Everett's position, the inability to separate the mental trauma from the physical trauma cuts in favor of finding they are interrelated, not the alternative.

Because the undisputed record shows that Everett's mental injuries are related to Everett's physical injuries, Everett's negligence claims are barred by Montana's Workers' Compensation Act. Summary judgment is therefore granted in favor of Holiday and the Court does not reach Holiday's *quid pro quo* argument.

### III. Sealed Exhibits

Both parties either have sought or currently seek to seal exhibits associated with the present motion. (*See* Docs. 30, 32, 36.) Having reviewed all those exhibits, only some shall remain under seal. A seal is warranted for Everett's medical evaluations and records. (*See* Ex. D, Doc. 31-4; Ex. E, Doc. 31-5; Ex. H, Doc. 31-8; Ex. I, Doc. 31-9; Ex. J, Doc. 31-10; Ex. L, Doc. 35-2.) While the remaining exhibits discuss Everett's mental health, medical issues, and workers' compensation claim, there are not compelling reasons that outweigh the "strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal quotation marks omitted).

That conclusion is supported by the fact that Everett's mental health is a central issue in the case and Holiday has redacted personal identifying information.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Holiday's motion for summary judgment (Doc. 27) is GRANTED as to Everett's negligence-based claims (Counts 1 and 2). As a result, the case is now limited to Everett's intentional tort claims (Counts 3 and 4) for alleged conduct and injuries sustained after June 14, 2020. (*See* Doc. 23.)

IT IS FURTHER ORDERED that Everett's motion to seal (Doc. 36) is GRANTED in PART and DENIED in PART. The Clerk is directed to file the following exhibits in the public record:

- Doc. 31-1: Ex. A, Holiday Employee Record
- Doc. 31-2: Ex. B, Plaintiff's First Discovery Responses
- Doc. 31-3: Ex. C, Everett's Deposition
- Doc. 31-6: Ex. F, Workers' Compensation Letter
- Doc. 31-7: Ex. G, Barker's Deposition
- Doc. 35-1: Ex. K, Workers' Compensation Email
- Doc. 35-3: Ex. M, Police Report
- Doc. 35-4: Ex. C-2, Additional Deposition Excerpts.

DATED this 1st day of August, 2022.

09:55 A.M.

Donald W. Molloy, District Judge
United States District Court